UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE,

      Plaintiff,

                                    Civil Case No. 15-14255
v.                                 Honorable Linda V. Parker

JOHN MILLER, TROY CUNNINGHAM,
TROY STEWART, MICHAEL SHORT, and
ART KLEINERT,

      Defendant.
_____/

## <u>OPINION AND ORDER GRANTING DEFENDANTS'</u><br><u>MOTION FOR SUMMARY JUDGMENT</u>

      This is a civil rights action arising from Plaintiff Robert Lee's unsuccessful

candidacy for Bay County Sheriff in 2012 and 2016.  In his First Amended

Complaint, Plaintiff alleges that Defendants conspired to infringe his First

Amendment rights in violation of 42 U.S.C. § 1985(3) and deprived him of his

rights to equal protection in violation of 42 U.S.C. § 1983.[1]  Presently before the

Court is Defendants' motion for summary judgment, filed pursuant to Federal Rule

_____

[1] Plaintiff also alleged a violation of 42 U.S.C. § 1986 in his First Amended
Complaint.  That count, however, applied specifically to two defendants, Kurt
Asbury and Jeffrey Stroud, who were dismissed by stipulation on August 30, 2016.
(*See* ECF No. 27.)

of Civil Procedure 56 on June 14, 2017.[2]  (ECF No. 39.)  The motion has been

fully briefed.  (ECF Nos. 47, 52.)  Finding the facts and legal arguments

sufficiently presented in the parties' filings, the Court is dispensing with oral

argument pursuant to Eastern District of Michigan Local Rule 7.1.  For the reasons

that follow, the Court is granting Defendants' motion.

## I.    Factual Background

In 2012, shortly after retiring from his position as a deputy with the Bay

County Sheriff's Department, Plaintiff announced his candidacy for Bay County

Sheriff.  Plaintiff ran against long-time incumbent Defendant John Miller

("Miller").  Defendant Troy Cunningham ("Cunningham") was the Undersheriff

for Bay County and a supporter of Miller.  Defendant Michael Shore ("Shore"), a

road patrol sergeant with the sheriff's department, and Defendant Art Kleinert

("Kleinert") a sheriff's department deputy, also supported Miller.

As Bay County Sheriff, Miller oversaw the county's jail and appointed its

administrator, Defendant Troy Stewart ("Stewart").  Stewart also supported

Miller's candidacy.

Plaintiff alleges that Miller gave favorable treatment to Bay County

employees who supported his candidacy and "crack[ed] down" on employees who

---

[2] Also pending is Defendants' motion for sanctions against Plaintiff pursuant to
Federal Rule of Civil Procedure 11.  (ECF No. 53.)  The Court will address that
motion in a separate decision.

supported Plaintiff.  For example, Plaintiff claims Miller failed to discipline Bay County Sheriff's Department corrections officer Lori Redman when she physically assaulted another officer because she was a supporter of Miller's campaign and her husband was Miller's campaign manager.  According to Plaintiff, Miller terminated Bay County Sheriff's Department deputy Jason Holsapple because Holsapple vocally supported Plaintiff's candidacy.

Plaintiff lost to Miller in the 2012 election by less than 300 votes.  On February 14, 2014, Plaintiff officially declared his candidacy for sheriff in the 2016 election.

Shortly thereafter, on April 8, 2014, Plaintiff attended a meeting of the Bay County Commissioners.  At the meeting, Plaintiff publicly criticized Miller for his absenteeism as sheriff.  Plaintiff also made public statements about Shore and Stewart.  Specifically, Plaintiff asserted that Shore acted negligently in responding to a 911 call reporting the death of an elderly woman under non-suspicious circumstances at a home in the county.  Shore refused to send a sheriff's car to retrieve the body, resulting in the deceased's family having to wait for a Michigan State trooper to respond.  Plaintiff alleged that Stewart committed a felony by smuggling a "controlled substance" into the jail for an inmate.  The substance was a prescription-strength mouthwash called Peridex to treat the inmate's serious dental condition.

Stewart and Shore separately sued Plaintiff for defamation based on the statements Plaintiff made about them at the commissioners' meeting. Plaintiff claims the lawsuits were frivolous. According to Plaintiff, Shore told Neil Papin, a janitor in the sheriff's department, that the purpose of the lawsuits was to make Plaintiff spend his money on litigation, so he would have insufficient funds for his campaign for sheriff during the 2016 election. (Pl.'s Resp. Br. at 14, ECF No. 47 at Pg ID 1612.) Plaintiff cites Papin's deposition transcript in support of this assertion; however, no transcript has been filed in this case.[3] Plaintiff did file an affidavit from Papin on August 9, 2017. (ECF No. 50.) Nowhere in his affidavit, however, does Papin mention the lawsuits or make a statement supporting this factual assertion. (*See id.*)

In December 2015, the state court ruled that Plaintiff's statements regarding Stewart were defamatory. (Defs.' Mot. Ex. 7 at 1, ECF No. 41-7 at Pg ID 1372.) Similarly, the court concluded that Plaintiff's statements regarding Shore "assert[ed] facts that can be proven false." (*Id.* Ex. 8 at 3, ECF No. 41-8 at Pg ID 1392.) The judge dismissed Stewart's and Shore's lawsuits, however, concluding that they were public officials and thus needed to meet a heightened evidentiary standard to prove their claims—that is, they needed to prove that Plaintiff made the

---

[3] Plaintiff cites the transcript as Exhibit 27 to his brief, but behind tab 27 is a page indicating that the transcript is "pending." (*See* ECF No. 48-27 at Pg ID 1925.) Plaintiff has not supplemented the record with the transcript.

statements with actual malice.  (*Id*., Ex. 7 at 1, ECF No. 41-7 at Pg ID 1372; Ex. 8 at 4, ECF No. 41-8 at Pg ID 1395.)  The court found insufficient evidence to support a finding of malice.  (*Id*. Ex. 7 at 5-6, ECF No. 41-7 at Pg ID 1376-77; Ex. 8 at 7, ECF No. 41-8 at Pg ID 1396.)

Stewart appealed the trial court's decision.  On June 8, 2017, the Michigan Court of Appeals reversed.  (*Id*., Ex. 4, ECF No. 41-4.)  The appellate court concluded that "the evidence … would be sufficient for a rational trier of fact to find by clear and convincing evidence that defendant's [Lee's] statements were made with reckless disregard for their truth."  (*Id*. at 2, Pg ID 1268.)

Plaintiff filed motions in the state trial courts seeking sanctions against Stewart and Shore pursuant to Michigan Compiled Laws Section 600.2591.  (*Id*. Ex. 7, ECF No. 41-7 at Pg ID 1383; Ex. 8, ECF No. 41-8 at Pg ID 1397.)  Section 600.2591 *requires* the court to award costs and fees incurred by a party to an action where the action was frivolous.  Mich. Comp. Laws § 600.2591.  The state trial judge denied Plaintiff's motions.  (Defs.' Mot., Ex. 7, ECF No. 41-7 at Pg ID 1383; Ex. 8, ECF No. 41-8 at Pg ID 1397.)

Miller did not run for re-election in 2016, and announced his retirement as Bay County Sheriff effective at the end of 2016.  Plaintiff ran in the Democratic primary against Cunningham and Terry Spence.  In response to Defendants' motion, Plaintiff alleges that Miller, Cunningham, Shore and others "actively

intimidated general citizens in the community that supported [Plaintiff]." (Pl.'s Resp. Br. at 15, ECF No. 47 at Pg ID 1613.) Plaintiff deposed four Bay County residents who, according to Plaintiff, testified that Shore and other sheriff department deputies intimidated them and removed their election materials (e.g., yard signs and vehicle bumper stickers) supporting Plaintiff for sheriff during the 2016 election. (*See, id.*, Ex. 8, ECF No. 48-8, citing Exs. 55, 57-59.)

During his deposition in this matter, one of these witnesses, Thomas Jane, could not identify the individuals who came to his home and asked him to remove Plaintiff's campaign signs from his front lawn. (Defs.' Mot., Ex. 12 at 9-10, ECF No. 37-13 at Pg ID 878-79.) Jane could not even say that the men were sheriff's department employees, only that they represented someone running against Plaintiff. (*Id.* at 7, Pg ID 876.) While Jane signed an affidavit stating that one of the men was Shore, he testified at his deposition that he could not say that one of them was Shore and he was unable to identify Shore who was present at the deposition. (*Id.* at 10, Pg ID 879.) Jane testified, however, that he still voted for Plaintiff. (*Id.* at 19, Pg ID 888.)

Another witness, Stephen Beson, also had a yard-sign supporting Plaintiff in his front yard. (Defs.' Mot. Ex. 11 at 7, ECF No. 37-12 at Pg ID 831.) Beson testified that Shore and another officer came to his home and identified themselves as sheriffs working on Cunningham's campaign. (*Id.* at 9, ECF No. 833.) Beson

further testified that they told him it "would be in [his] best behalf" to remove Plaintiff's sign and replace it with a Cunningham sign. (*Id*.) Shore told Beson that it was against Beson's "better decision" not to remove Plaintiff's sign because Plaintiff "had cost lots and lots of money to the county and shouldn't be the sheriff, and that if he became the sheriff that he [Shore] wouldn't be able to go up the ladder." (*Id*. at 9, 26, Pg ID 833, 859.)

Beson testified that he reported the incident the following day to Michigan State Police Officer Bill Arndt. (*Id*. at 8, ECF No. Pg ID 832.) Arndt told Beson that he was going to talk to Cunningham that day. (*Id*. at 15, Pg ID 839.) Later that day, Beson received a call from Cunningham who apologized for what Shore said and indicated it would never happen again. (*Id*. at 15, 26, Pg ID 839, 850). Beson still voted for Plaintiff. (*Id*. at 30, Pg ID 854.)

A third witness, James Murphy, testified that Shore and another sheriff's deputy came by his house sometime in June 2015, and Murphy saw Shore remove a sign supporting Plaintiff's campaign from the south corner of Murphy's property. (Defs.' Mot., Ex. 10 at 7-8, ECF No. 37-11 at Pg ID 787-78.) Shore or the unidentified deputy also removed two campaign bumper stickers from Murphy's trucks. (*Id*. at 13, Pg ID 793.) Murphy spoke with Shore and the other deputy, but Murphy did not ask why they removed the campaign materials. (*Id*. at 9, Pg ID 789.) In fact, Murphy indicated that he told them to go ahead and take the

materials.  (*Id*. at 32, Pg ID 812.) Murphy testified that he did not really care that they took the sign or bumper stickers, and he did not care whether Plaintiff was elected sheriff.  (*Id*. at 28, 31, Pg ID 807, 811.)  He only displayed the campaign materials because Papin asked him to.  (*Id*. at 28, Pg ID 808.)

At the deposition, Murphy was not able to identify Shore, who was present. (*Id*. at 22, Pg ID 802.)  Murphy testified that he had never seen Shore before.  (*Id*.) Murphy signed an affidavit stating that he and his son "were coerced into voting for someone who we didn't want to vote for."  (*See* Pl.'s Resp., Ex. 58 at 3, ECF No. 48-58 at Pg ID 2310.)  Murphy testified, however, that he did not vote in the election for sheriff.  (Defs.' Mot., Ex. 10 at 22, ECF No. 37-11 at Pg ID 802.) When asked why not, Murphy answered: "I don't vote."  (*Id*.)

Murphy's son Steve also was deposed during this litigation.  (Pl.'s Resp., Ex. 60, ECF No. 48-60.)  Steve signed the same affidavit as his dad about the incident with the removal of the campaign materials (*see* Pl.'s Resp., Ex. 58, ECF No. 48-58); however, Steve's testimony reflects that he has no first-hand knowledge regarding many of the facts asserted in the affidavit.  Steve saw the yard sign and bumper stickers for Plaintiff being removed, but assumed his father had talked to the men who did it.  (*Id*. at 8, Pg ID 2341.)  Steve testified that he spoke to the men, but only generally about the campaign, such as when the election

was and who the candidates were, and that they told him to register to vote because he was not registered. (*Id*. at 9, Pg ID 2342.)

Plaintiff alleges in his First Amended Complaint that Kleinert and Cunningham also engaged in "illegal trash pulls", which involved taking trash bags from Plaintiff's property to the sheriff's department and searching through them for adverse information to use against Plaintiff in the election. (Pl.'s First Am. Compl. ¶¶ 71-77, ECF No. 3 at Pg ID 37.) Plaintiff also alleges that Kleinert, at Cunningham's direction, removed trash from Plaintiff's property on two occasions within the last two years. (*Id*. ¶ 73.) Plaintiff relies on Papin's affidavit to show that this occurred. (*See* Pl.'s Resp., Ex. 12, ECFR No. 48-12.)

Papin states in his affidavit that he saw Kleinert going through someone's trash in a room inside the sheriff's department sometime prior to August 12, 2013, and then again about a month after that date. (ECF No. 50 at Pg ID 2376-77.) On the second occasion, Kleinert told Papin: "The boss tells me what to do and I do it." (*Id*. at Pg ID 2377.) Papin does not indicate in his affidavit that Kleinert said the trash came from Plaintiff's house or that anything indicated that it did. (*Id*.) Plaintiff only speculates that the trash was his, and he apparently told Papin that someone had been messing with his trash around the same time. (*Id*.)

Plaintiff lost the 2016 primary and Cunningham ran against the Republican candidate Jason Holsapple. Cunningham won.

9

## II.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the

non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  Notably, the trial court is not required to construct a party's argument from the record or search out facts from the record supporting those arguments.  *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.1989) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091 (1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]"  *InterRoyal Corp.*, 889 F.2d at 111.

## III. Applicable Law and Analysis

Section § 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To prevail on a § 1985(3) claim, the plaintiff must show:

> "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

*Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). The plaintiff must plead with some degree of specificity the facts supporting the existence of a conspiracy. *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (affirming dismissal of § 1985(3) claim where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory").

In his First Amended Complaint, Plaintiff alleges that Defendants engaged in a conspiracy to infringe the First Amendment rights of people "who were political supporters of Plaintiff *and* employed by the sheriff's department." (Pl.'s First. Am. Compl. ¶¶ 27, 43, ECF No. 3 at Pg ID 29, 31, emphasis added.) Defendants seek summary judgment, arguing that Plaintiff lacks evidence of a

12

conspiracy and the violation of his constitutional rights. More fundamentally, however, Plaintiff's § 1985(3) claim fails because the class he identifies does not support liability under the statute.

The Supreme Court has stated that "[t]he language [in § 1985(3)] requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Citing the Sixth Circuit's decision in *Cameron v. Brock*, 483 F.3d 608, 610 (1973), Plaintiff states in his complaint and argues in response to Defendants' motion that "[p]ersons who are supporter[s] of a particular political candidate are a clearly defined class protected from invidious discrimination under § 1985(3) as a matter of law." (Pl.'s First Am. Compl. ¶ 39, ECF No. 3 at Pg ID 31; *see also* Pl.'s Resp. Br. at 23, 30, ECF No. 47 at Pg ID 1621, 1628.) Intervening Supreme Court and Sixth Circuit precedent calls the result in *Cameron* into considerable doubt, however.

In *United Brothers of Carpenters and Joiners v. Scott*, 463 U.S. 825 (1983), the Supreme Court considered whether a claim under § 1985(3) could lie when the underlying charge was discrimination on the basis of union membership. *Id.* at 830. The Fifth Circuit had held that § 1985(3) reaches conspiracies motivated by economic bias, reasoning that the statute was aimed in part at Republicans who

were among the objects of the Ku Klux Klan's Reconstruction-era conspiratorial activities and that if the statute reached animus against political association it reached the sufficiently similar animus against an economic group. *Id*. at 835-36 (citing *Scott v. Moore*, 680 F.2d 979 (5th Cir. 1982) (en banc)). The Supreme Court reversed. *Id*.

In doing so, the Court explained that "[t]he predominate purpose § 1985(3)" was to address racial animus. *Id*. at 836. The Court indicated that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." *Id*. at 836. The Court in fact has never found that a criterion other than race can serve as the basis for a qualifying class under § 1985(3).

Examining the legislative history "marshalled in support of the position that Congress meant to forbid wholly non-racial, but politically motivated conspiracies," the *Scott* Court in dicta found "difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means." *Id*. The Court reasoned:

> To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another

14

> political party by encouraging the heckling of its rival's speakers and
> the disruption of the rival's meetings.

*Id.* While the Court's statements regarding animus toward political activities or

beliefs was dicta, it made clear that § 1985(3) does not "reach conspiracies

motivated by economic or commercial animus." *Id.* at 838.

A few years after *Scott*, in *Conklin v. Lovely*, 834 F.2d 543 (1987), the Sixth

Circuit again was faced with the issue of whether § 1985(3) reaches conspiracies

motivated by political views. Finding that the *Scott* Court only answered whether

§ 1985(3) reaches conspiracies motivated by economic bias, the Sixth Circuit held

that it was constrained by prior precedent—that being *Cameron*—to conclude that

the statute reaches conspiracies aimed at a class on account of political views or

activities. *Conklin*, 834 F.2d at 549. The court recognized, however, that other

Circuits had reached a contrary decision since *Scott*. *Id.* (citing *Grimes v. Smith*,

776 F.2d 1359 (7th Cir. 1985); *Brown v. Reardon*, 770 F.2d 896 (10th Cir. 1985);

*Harrison v. KVAT Food Mgmt.*, 766 F.2d 155 (4th Cir. 1985)).

In fact, the Sixth Circuit stands alone in holding after *Scott* that animus

based on political affiliation with a particular candidate or political beliefs or

activities is entitled to protection under § 1985(3). The First, Second, and Third

Circuits have joined those Circuits concluding that discrimination against a class

based on political affiliation or beliefs is not so invidious that § 1985(3) applies.

*Perez-Sanchez v. Public Bldg. Auth.*, 531 F.3d 104, 108-09 (1st Cir. 2008); *Farber*

*v. City of Patterson*, 440 F.3d 131, 142 (3d Cir. 2006); *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989) (declining to decide after *Scott* whether membership in a political party is a protected class under § 1985, but holding that the statute does not reach animus based on political or philosophical opposition to the defendants); *see also Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) (upholding dismissal of § 1985(3) claim brought by state representatives, finding support in *Scott*'s indication "that section 1985(3) probably did not extend to wholly political, non-racial conspiracies").[4]  Moreover, since the Sixth Circuit's decision in *Conklin*, the Supreme Court had the opportunity to again address the scope of the class protected under the statute in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).  The *Bray* Court concluded that § 1985(3) does not extend to a class identifiable only by its members' activities or desire to engage in certain conduct.  *Id.* at 269 (holding that "women seeking abortions"

---

[4] The Ninth Circuit relied on the following to reach its decision:

> Generally, our rule is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights. More specifically, we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536–37 (9th Cir.1992).

were not a protected class because "the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors").

Subsequent to *Bray*, the Sixth Circuit has held that to be protected by § 1985(3), a class "must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (1994) (citing *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992)). The court reiterated this language more recently in *Vakilian v. Shaw*, 335 F.3d 509, 519 (6th Cir. 2003) (quoting *Haverstick*, 32 F.3d at 994), and *Warner v. Greenbaum, Doll & McDonald*, 104 F. App'x 493, 498 (6th Cir. 2004) (unpublished) (same). In *Vakilian*, the Sixth Circuit held that the defendants were not entitled to qualified immunity with respect to a § 1985(3) claim brought by an Iranian-born physician. 335 F.3d at 521. In comparison, the court held in *Warner* that environmentalists opposing a mining company's application for zoning change were not protected by the statute. 104 F. App'x at 498-99.

This Court does not believe that the class identified by Plaintiff falls within the types of classes—that is, "discrete and insular minorit[ies]"—the Sixth Circuit has found protected by § 1985(3) subsequent to *Bray*. On this basis, the Court would grant summary judgment to Defendants on Plaintiff's § 1985(3) claim.

Defendants also are entitled to summary judgment, however, because Plaintiff fails to present evidence to show the deprivation of his federal constitutional rights or a conspiracy to interfere with those rights.

In his First Amended Complaint, Plaintiff, lists several actions he claims Defendants took in furtherance of the alleged conspiracy: (1) express statements by Miller and others about loyalty to and political support for Miller, (2) illegal "trash pulls", (3) violation of Michigan's Campaign Finance Act, (4) disparate treatment based on whether individuals supported Miller, and (5) "SLAPP"[5] lawsuits against Plaintiff. (Pl.'s First Am. Compl. ¶ 53, ECF No. 3 at Pg ID 34.) In response to Defendants' motion, Plaintiffs adds the following: (a) "[a]ctive intimidation of citizens displaying 'Lee for Sheriff' yard signs", (b) "Cunningham's criminal complaint about [Matthew] Gillis and [Fred] Walraven posting Cunningham's 'like' of patently racist Facebook meme about Office Wilson of Ferguson", and (c) "Defendants' active intimidation of Lee and Papin during this civil case." (Pl.'s Resp. Br. at 33-34, ECF No. 47 at Pg ID 1631-32.)

Plaintiff lacks standing to bring a claim based on actions against other individuals absent evidence of a causal connection between the action and a direct

_____

[5] Plaintiff provides in his First Amended Complaint that "SLAPP" stands for "strategic lawsuit against public participation" and "is a lawsuit that is intended to censor, intimidate, and silence critics by burdening them with the cost of a legal defense until they abandon their criticism or opposition." (Pl.'s First Am. Compl. at 9 n.9, ECF No. 3 at Pg ID 34.)

or indirect injury to *him*.[6]  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, n.1 (1992) (explaining "that the irreducible constitutional minimum of standing" requires that the plaintiff suffered an injury that is "concrete and particularized," and "[b]y particularized, [the Court] mean[s] that the injury must affect the plaintiff in a personal and individual way.").  Plaintiff does not dispute this point in response to Defendants' summary judgment motion.  (*See* Pl.'s Resp. Br. at 41, ECF No. 47 at Pg ID 1649.)  He contends, however, that he was indirectly injured by Defendants' actions.  (*Id.*)  Yet Plaintiff fails to present evidence to demonstrate any alleged indirect injury.  Most significantly, he does not demonstrate that any person failed to vote for him because of Defendants' actions.

Similarly, Plaintiff offers no specific facts to support his claim that Defendants' alleged violations of Michigan's campaign finance laws violated his federal constitutional rights.  In other words, Plaintiff fails to establish a causal connection between Defendants' alleged violations of state law and a direct or indirect injury to his federal constitutional rights.

---

[6] Additionally, Plaintiff's reliance on Defendants' alleged intimidation of citizens displaying his campaign signs is misplaced, as the class he defines as being the subject of Defendants' conspiracy includes only supporters of his candidacy who *also* worked for the sheriff's department.  None of the individuals he identifies as being "intimidated" because of campaign signs fall within this class.

With respect to the trash pulls, Plaintiff presents no evidence to show that Defendants in fact removed trash from his home. Plaintiff relies on a statement by Papin to demonstrate that Kleinert removed Plaintiff's trash bags at Cunningham's direction, but that statement can be found nowhere in the record evidence. In any event, even if there was proof that these defendants took Plaintiff's trash, there was nothing unlawful about their conduct and no evidence suggesting that the purpose of the conduct was to deprive Plaintiff of his constitutional rights. *See California v. Greenwood*, 486 U.S. 35, 37 (1988) (holding that the Fourth Amendment does not prohibit the warrantless search or seizure of garbage left for collection outside the curtilage of a home).

Plaintiff indicates in a footnote to his response brief that the removed trash bags were in a location so as to be excepted from the Supreme Court's holding in *California v. Greenwood*. Specifically, Plaintiff states without citation to the record that the bags were in a chained and locked dumpster. (*See* Pl.'s Resp. Br. at 37 n.41, ECF No. 47 at Pg ID 1635.) The evidence in the record is contrary to Plaintiff's assertion. Specifically, during his deposition in this matter, Plaintiff testified that the removed trash was at the curb. (Defs.' Mot., Ex. 2 at 191, ECF No. 41-2 at Pg ID 1188.)

Plaintiff cannot establish that Stewart's or Shore's lawsuits against him were frivolous and intended to interfere with his First Amendment rights. The state

courts have conclusively held that Plaintiff's statements concerning Stewart and Shore were false. The court also concluded that the lawsuits were not frivolous. Contrary to Plaintiff's assertion, this Court believes those findings do have a preclusive effect in this litigation. In any event, Plaintiff proffers no evidence to show that Stewart or Shore filed the lawsuits to deprive Plaintiff of equal protection.

Finally, Plaintiff claims that Defendants actively intimidated him during this lawsuit. In support of this assertion, Plaintiff refers to threats Stewart allegedly made while they were in a restroom during a deposition in this case. (Pl.'s Resp. Br., Ex. 10, ECF No. 48-10.) Plaintiff stated on the record at the deposition that Stewart came into the restroom after Plaintiff and "made an accusation that I apparently took a photo of him and his wife and his granddaughter and in a county car or whatever, and he said now you've involved my wife and my granddaughter in this and don't think that it's going to go unchecked." (Pl.'s Resp., Ex. 63 at 4-5, EFC No. 48-63 at Pg ID 2357-58.) This statement, however, has nothing to do with the conspiracy Plaintiff alleges in this action.

For all of these reasons, the Court concludes that Defendants are entitled to summary judgment with respect to Plaintiff's § 1985(3) claim. Many of the same reasons support summary judgment in favor of Defendants on Plaintiff's claim that they violated his rights under § 1983.

To state a claim under § 1983, a plaintiff "'must establish that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States.'" *Radvansky*, 395 F.3d at 302 (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)). In his First Amended Complaint, Plaintiff alleges that the trash pulls violated his right to equal protection of the law or, alternatively, his Fourth Amendment rights. (Pl.'s First Am. Compl. ¶ 339, n.144, ECF No. 3 at Pg ID 78.) In response to Defendants' motion, Plaintiff adds Defendants' violation of Michigan's Campaign Finance Act as a basis for his § 1983 claim. (Pl.'s Resp. Br. at 36, ECF No. 47 at Pg ID 1634.)

Plaintiff's claim concerning the removal of his trash falls within the Fourth rather than the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 807, 813 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). For the reasons already stated, the alleged trash pulls were not violative of the Fourth Amendment.

Plaintiff's assertion that Defendants violated state finance laws cannot support a claim under § 1983. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir.

2010) ("It has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.").

In short, Plaintiff fails to establish that any defendant violated his federal rights to support a § 1983 claim.

## IV.    Conclusion

For the reasons stated, the Court holds that Plaintiff presents insufficient evidence to survive summary judgment with respect to his claims under § 1985(3) or § 1983.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 39) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 28, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 28, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager